1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | | |
|---|---|---|
| KEYSHA L. AINSWORTH, | ) | Case No. EDCV 18-01116-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | |
| v. | ) | **ORDER OF REMAND** |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On May 5, 2018, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12). On October 11, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). On February 14, 2019, the parties filed a Joint

Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 25).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 24, 2014, Plaintiff, formerly employed as an insurance agent, a real estate loan coordinator, and a loan collection officer (see AR 37-45, 65-68, 263), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since January 31, 2014. (See AR 219-22). On the same date, Plaintiff filed an application for Supplemental Security Income, alleging a disability since July 18, 2014. (See AR 223-29).

On February 6, 2017, the Administrative Law Judge ("ALJ"), John Moreen, heard testimony from Plaintiff (represented by counsel) and vocational expert Davis Martin Brodwin. (See AR 35-73). On April 28, 2017, the ALJ issued a decision denying Plaintiff's applications. (See AR 13-27). After determining that Plaintiff had severe impairments -- depressive disorder and post-traumatic stress disorder (AR 15-16)[1] -- but did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments (AR 16-18), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2]

_____

[1]    The ALJ found that Plaintiff's other impairments -- back and sciatic leg pain, and obesity -- were nonsevere.  (AR 16).

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.   See 20
(continued...)

2

to perform a full range of work at all exertional levels with the following non-exertional limitations: can perform moderately complex tasks of four to five steps; no interpersonal interactions and no team work; and no highly stressful jobs with high production quotas. (AR 18-25). The ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 25), but that Plaintiff could perform jobs existing in significant numbers in the national economy and was therefore not disabled within the meaning of the Social Security Act. (AR 26-27).

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 217, 351-53). The request was denied on March 29, 2018. (See AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence

---

[2] (...continued)
C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).[3]

### PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ erred in failing to (1) provide proper reasons for finding Plaintiff's testimony not credible; (2) properly reject the opinions of Plaintiff's treating psychiatrist and other treating physicians; and (3) properly reject Plaintiff's mother's testimony. (See Joint Stip. at 4-11, 16-24, 29-33).

### DISCUSSION

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's second and third claims of error.

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

**A.    The ALJ Did Not Properly Assess Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not provide proper reasons for finding that Plaintiff's testimony about her symptoms and limitations was not fully credible. (See Joint Stip. at 4-11, 16-18).  Defendant asserts that the ALJ provided sufficient reasons for finding Plaintiff not fully credible.  (See Joint Stip. at 11-16).

1.    <u>Legal Standard</u>

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . ."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[4]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms

---

[4]    SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's March 29, 2018 denial of Plaintiff's request for review.  20 C.F.R. § 404.1529, the regulation on evaluating a claimant's symptoms, including pain, has not changed.

alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. <u>Brown-Hunter v. Colvin</u>, 798 F.3d 749, 755 (9th Cir. 2015)(citing <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)); <u>see</u> <u>also</u> <u>Smolen</u>, <u>supra</u>; <u>Robbins v. Social Sec. Admin</u>, 466 F.3d 880, 883 (9th Cir. 2006); <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not find that Plaintiff was malingering,[5] the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. <u>See</u> <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

_____

[5] Although the ALJ, when addressing Plaintiff's testimony, *noted* that the examining psychologist, Dr. Margaret Donohue, found that Plaintiff was a malingerer (<u>see</u> AR 24 ["Finally, Dr. Donohue's consutative examination report and her diagnosis of malingering is noted (Exhibit B3F/6)"]; <u>see</u> <u>also</u> AR 23), the ALJ gave Dr. Donohue's opinion little weight (<u>see</u> AR 23) and did not affirmatively find that Plaintiff was a malingerer.

2.  <u>The ALJ's Credibility Findings</u>

Plaintiff made the following statements in a Function Report –
Adult dated December 6, 2014 (<u>see</u> AR 279-87):

She lives in a house with family.  Her mood changes,
lack of memory, difficulty concentrating, panic attacks,
anxiety, irritablility, restlenessness, nervousness, and
difficulty sleeping limit her ability to work.  (<u>See</u> AR 279).

With respect to her daily activites, every day is
different.  Some days she wants to stay in bed; other days
she gets up, dresses, and goes on a walk.  She does not take
care of anybody else or pets.  Prior to her conditions, she
took care of her daughter (who passed away).  Her conditions
affect her sleep –– she sleeps all day, but her new
medication prevents her from sleeping (so she has to take
medication to sleep).  She does not have any problem with
personal care (dressing, bathing, caring for hair, shaving,
feeding self, using the toilet), but some days she does not
feel like taking care of her personal needs.  Her mother
sometimes asks her if she took her medication.  She is able
to make sandwiches or warm up food in the microwave, but her
mother normally prepares her food or meals.  She no longer
cooks because she does not have the desire or the
concentration/memory.  She does not do any household chores,
except for making her bed when she decides to get up or
washing her plate or glass after eating (it takes her time to
do such chores, and her mother needs to encourage her to do
such chores).  She goes outside when she feels like it,
driving or riding in a car.  She shops in stores to buy
groceries (about once a month with her mother) and to buy
personal items.  She is able to pay bills (her mother pays
her bills), count change, handle a savings account, and use
a checkbook/money orders.  Since her conditions began, she
has not had her own money to handle.  She does not have any
hobbies and interests, and she does not know if her hobbies
and interests have been affected by her conditions.  Twice a
month she goes out with a friend for a meal or just to get
out.  She does not go any places on a regular basis.  She can
go out without anybody accompanying her.  Since her
conditions began, she does not have any desire to do social
activities.  (<u>See</u> AR 280-84).

Her conditions affect her abilities to remember,
complete taks, concentrate, and understand and follow
instructions.  She can pay attention for 5 to 10 minutes.
She does not finish what she starts.  She does not follow
written instructions well because her mind drifts off.  She
thinks she follows spoken instructions okay.  She has never

7

been fired or laid off from a job because of problems getting along with other people. She is not able to handle stress or changes in routine. Her unusual behaviors are not remembering things and feeling fearful. She takes the following medications (which either affect her sleep or make her sleepy): Bupropion, 150 mg; Doxephin, 50mg; Temazepam, 30 mg; Lorazepham; and Sertraline/Remeron. (See AR 284-86).

Plaintiff gave the following testimony at the administrative hearing (see AR 36-53, 55-68):

She is 50 years old, and she lives with her mother in her mother's house. She attended college, but did not obtain a degree or a certificate. In 2011 her daughter died of cancer -- her daughter's death was a shock; taking care of her daughter caused her hair to fall out. She is not able to work because she has: (1) panic attacks every other day (her mind shuts down, she cannot breathe, she hears voices in her head, she has to get away from crowds, she has bad thoughts about sometimes hurting herself or acting violently) which sometimes last about one and half hours and for which she takes medication daily (an extra pill, which she carries on her, helps her calm down but does not prevent such attacks); (2) memory loss/forgetfulness daily (she forgets what she is doing; her mother thinks it could be a side effect of her medications); (3) confusion daily; (4) depression (she cries once or twice a day -- medication sometimes but does not always control her crying; the crying sometimes lasts until she has a panic attack and starts to vomit and then goes to sleep); and (5) insomnia (she sometimes is up all night, and appears to see shadows of individuals to whom she talks; the medications have not helped her and have side effects, including leg cramps, numb legs, trembling, and incoherent speech). Her crying outbreaks happen all the time, and are triggered by any reminders about her daughter (television commercials, seeing her niece, visits from family with children). (See AR 36-37, 45-48, 55-63).

She last worked in 2011. From 2007 to 2011, she received self-employment income for work as an insurance agent. From 2006 to 2007, she worked for her family's business as a loan originator/coordinator for real estate. She left that job in 2007 because her daughter got sick. From 2002 to 2005, she worked as a loan collection officer. All three positions were desk jobs which did not involve lifting and carrying. (See AR 37-45, 65-68).

When asked about the consultative examiner's finding that she was a malingerer, she said that the day of the evaluation (her friend took her there), she was not feeling mentally well (which means "I shut(s) [sic] down and I don't

8

feel like doing nothing", and she was on a new medication), and she told the examiner she was confused and was not feeling well. She did not understand that the evaluation was to determine whether or not she was disabled; she just thought she was going for an evaluation. After she left the evaluation, she had a panic attack and vomited. (See AR 49-51, 60-61, 64).

She has someone treat and wash her hair (her hair has not fully grown back since 2011). She no longer cooks; she burned herself taking something out of the oven with her hands. She makes her bed and vacuums. She used to do laundry, but now her mother does the laundry (her mother does not want her dealing with machines). She has a driver's license, but her friend drove her to the hearing. She shops for groceries and does activities with her mother; she does not shop for groceries on her own -- the last time she went shopping on her own, 3 to 4 months earlier, she walked out of the store without paying for the item). (See AR 47, 51-53, 60, 63-64).

After summarizing Plaintiff's testimony (see AR 19)[6], the ALJ discussed the medical evidence in the record, including the opinions of Plaintiff's treating physicians, the consultative examiner, and the

---

[6] The ALJ wrote:

The claimant alleges that she experiences depression; mood changes, anxiety, panic attacks (in which her mind shuts down, she can't breathe, and she has to isolate herself); crying spells; irritability; restlessness; insomnia; fearfulness; fatigue; problems focusing, concentrating, and understanding; memory loss; confusion; thoughts and voices in her head; "dreams" where she sees shadows of individuals and talks to them; hair loss; and feelings of emptiness, lifelessness, and being "blocked" (Exhibits B4E/2; B5E/1, 2, 6, 7; B9E/1; Hearing). As a result, she described difficulty following instructions, completing tasks, handling stress, and handling changes in routine (but does not claim any physical limitations) (Exhibit B5E/6, 7). The claimant also indicates that her medications cause poor focus, grogginess, sleepiness, an inability to sleep, hallucinations, suicidal thoughts, disturbing thoughts, anxiety, fatigue, a feeling of having a heavy head and needing to lie down, memory loss, slurred and slow speech, an inability to get words out, a painful rash on her face and neck, "feeling bad," and cramps and numbness in her legs (Exhibits B5E/8; B9E/1, 3; B11E/2, 5).

9

State agency psychiatric consultant. (See AR 19-24). The ALJ then addressed Plaintiff's testimony as follows:

> The claimant's allegations of generally disabling symptoms and limitations (including claims of hallucinations and suicidal thoughts caused by medication) are not corroborated by the evidence in the record, as detailed above. In addition, the record shows that the claimant has no problems with personal care; does not need any help dressing, bathing, preparing meals, doing household chores, or shopping; prepares food; performs some household chores (including making the bed, washing dishes, and vacuumming); drives a car; is able to pay bills, count change, handle a savings acount, and use a checkbook or money orders; spends time with friends daily (including talking, taking walks, and going out to lunch or dinner); and has breakfast and watches television with her mother (Exhibits B3F/3, 6; B5E/2, 3, 4, 5; B6E/2, 4, 5; B9E/4; B11E/6; Hearing). These activities are not inconsistent with the above residual functional capacity (which describes *the most* the claimant can do). They are, however, inconsistent with allegations of disability because they suggest that the claimant is capable of performing appropriate work activities on an ongoing and daily basis.

> Furthermore, as detailed above, there is considerable evidence of non-compliance with treatment (including failing to show up for appointments and not taking medication as

prescribed) (see, e.g., Exhibits B2F/16; B4F/2, 6, 21; B7F/10, 14; B9F/13, 21, 47, 48)[.]

The claimant also indicated that she could not write more than her own name in English, although she was able to complete a function report by hand (Exhibits B4E/1; B5E).

Finally, Dr. Donohue's consultative examination report and her diagnosis of malingering is noted (Exhibit B3F/6).

Accordingly, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained above. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objecctive medical and other evidence.

(AR 24-25).

3. <u>The ALJ's Assessment of Plaintiff's Testimony</u>

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms.[7]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007)(quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the ALJ's partial discounting of Plaintiff's testimony about her symptoms and limitations based on her ability to perform certain daily activities, such as personal care (including dressing and bathing), preparing meals and food, doing household chores (including making the bed, washing the dishes, and vacuumming), driving a car, shopping, abilities to pay bills, count change, handle a savings account, and use a checkbook or money orders, spending time with friends

---

[7]    The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (<u>see</u> Joint Stip. at 13-15, i.e., inconsistencies between Plaintiff's testimony and Plaintiff's medical records about hallucinations and suicidal thoughts caused by medications, nature of Plaintiff's responses at the administrative hearing, inconsistencies in Plaintiff's prior application). <u>See</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) and <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001)); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

(including talking, taking walks, and going out to lunch or dinner), and having breakfast and watching television with her mother was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). While a plaintiff's ability to spend a "*substantial part*" of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting may be sufficient to discredit him or her, here, there is no evidence that Plaintiff was spending a substantial part of her day engaged in these activities or that the physical demands of such tasks as personal care (including dressing and bathing), preparing meals and food, doing household chores (including making the bed, washing the dishes, and vacuumming), driving a car, shopping, abilities to pay bills, count change, handle a savings account, and use a checkbook or money orders, spending time with friends (including talking, taking walks, and going out to lunch or dinner), and having breakfast and watching television with her mother were transferable to a work setting. See Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014)("However, there is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial portion' of Ghanim's day, or were 'transferrable' to a work environment."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Indeed, at the hearing, the ALJ did not ask Plaintiff about the amount

13

of time it took her to perform personal care activity (including dressing and bathing), prepare meals and food, household chores (including making the bed, washing the dishes, and vacuuming), drive, shop, and spend time with friends (including talking, taking walks, and going out to lunch or dinner) or how often she did these activities. Thus, Plaintiff's admitted daily activities do not constitute a legally sufficient reason to reject Plaintiff's subjective symptom testimony.

It is not clear whether the ALJ considered Plaintiff's testimony about her limited abilities to perform such daily activities (see AR 280 [Plaintiff stated in the Function Report that on some days she gets dressed], AR 281 [Plaintiff stated in the Function Report that on some days she does not feel like taking care of her personal needs and grooming], AR 281 [Plaintiff stated in the Function Report that she "makes a sandwich" [and] warm[s] up food in the microwave," that her mother normally prepares food or meals, that it takes her time to prepare food or meals, and that she does not cook any more], AR 63-64 [Plaintiff testified at the hearing that she has somebody wash and treat her hair], AR 47, 51-52 [Plaintiff testified at the hearing that she no longer cooks], AR 281 [Plaintiff stated in the Function Report that she is very slow at making her bed and washing her own dishes and that she needs her mother's encouragement to do these chores], AR 52 [Plaintiff testified at the hearing that her friend drove her to the hearing], AR 282 [Plaintiff stated in the Function Report that she sometimes goes grocery shopping with her mother and that she shops once a month "if [she] decide[s] to go out with [her] mother"], AR 52 [Plaintiff testified at the hearing that she goes grocery shopping with her mother and not by herself], and AR 282 [Plaintiff stated in the Function Report

14

that although she has the abilities to pay bills, count change, handle a savings account, and use a checkbook or money orders, her mother pays her bills], and AR 283 [Plaintiff stated in the Function Report that her friend takes her out to lunch or dinner or to go walking twice a month]).  Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with her testimony regarding her symptoms and limitations.  See Reddick, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Third, although an ALJ may discount a claimant's credibility based on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991), the ALJ's partial discounting of Plaintiff's testimony about her symptoms and limitations based on her non-compliance with treatment (failing to show up for appointments and not taking medication as prescribed) was not a clear and convincing reason.  The evidence on which the ALJ relies (see AR 20-22, 24) -- specifically, Plaintiff's failure to show up for three appointments with her treating psychiatrist (see AR 385 [Medication Visit Interdisciplinary Note dated November 10, 2014], AR 457 [Medication Visit Interdisciplinary Note dated November 30, 2015], AR 453 [Medication Visit Interdisciplinary Note dated April 21, 2016]); Plaintiff's failure to show up for mammogram appointments (see AR 424 [Ambulatory Progress Note dated May

6, 2014, stating that "[Patient] needs a mammo order [Patient] missed last appt for mammo"], AR 507 [Ambulatory Progress Note dated May 28, 2015, stating that "[Patient] needs a mammo order has no showed a few appt scheduled already"], AR 409 [Ambulatory Progress Note dated December 10, 2014, stating that "[Patient] continues to no show her mammo appts"]; AR 404 [Ambulatory Progress Note dated March 18, 2015, stating that "[Patient] has missed multiple appointment for mammograms"]); Plaintiff's failure to take medications (see AR 508 [Ambulatory Progress Note dated May 28, 2015, stating: "[Patient] states that she recently realized that her mom was cutting some of her psych meds in half and was not giving all of them to her as well. [Patient] states she is not taking the medications as prescribed but at the time was feeling tired, dizzy and lethargic."], AR 481 [Ambulatory Progress Note dated May 31, 2016, stating: "[Patient] states her cramping did not improve after stopping her statin. [Patient] however did not restart the statin."]; and Plaintiff's failure to obtain laboratory tests (see AR 474 [Ambulatory Progress Note dated September 16, 2016, stating that "[Patient] here for follow up however she did not get her labs drawn as previously requested"] -- does not show that Plaintiff was not compliant with her psychiatric treatment from January 31, 2014, the disability onset date, through April 28, 2017, the date of the ALJ's Decision. Indeed, Plaintiff's mammogram appointments and cholesterol medication are unrelated to Plaintiff's psychiatric treatment. Moreover, at the hearing, the ALJ did not ask Plaintiff about the circumstances of her three missed psychiatric appointments and why she was not taking the psychiatric medications as prescribed. See SSR 16-3p, 2017 WL 5180304, *9 (". . . [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's

subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.  We may need to contact the individual regarding the lack of treatment or, at an **administrative** proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.").  Plaintiff may have provided a reason for missing the three psychiatric appointments, like she did on December 8, 2015 (see AR 492 [Ambulatory Progress Note dated December 8, 2015, stating that "[Patient] states she has a psych appointment coming up but she missed her last one because she had to take her mom to the doctor."] and on September 16, 2016 (see AR 474 [Ambulatory Progress Note dated September 16, 2016, stating that "[Patient] still seeing her thearpist and psychiatrist although she missed her last psychiatry appointment due to her care [sic] breaking down."]).

Fourth, the ALJ's partial discounting of Plaintiff's testimony about her symptoms and limitations based on an alleged inconsistency between a statement in a Disability Report that she could not write more than her own name in English and her ability to complete the Function Report by hand was not a clear and convincing reason, as Defendant concedes (see Joint Stip. at 15 ["The ALJ likely erred in finding an inconsistency when a form indicated Plaintiff could not write more than her name, but she was able to complete a hand written function report

. . . . It appears the disability report form contained a typographical error and was completed by someone else.")]).

Fifth, to the extent that the ALJ may have attempted to partially discount Plaintiff's testimony about her symptoms and limitations based on the consultative examiner's diagnosis of Plaintiff as a malinger (see AR 401 [Dr. Donohue diagnosed Plaintiff with malingering]), that reason was not clear and convincing. While the ALJ noted the diagnosis (see AR 24 ["Finally, Dr. Donohue's consultative examination report and her diagnosis of malingering is noted (Exhibit B3F/6)]), the ALJ did not affirmatively find that Plaintiff was a malingerer. Moreover, it does not appear that the ALJ acknowledged, considered, or addressed Plaintiff's testimony at the hearing about why she acted as she did at the consultative examination, specifically, that she was not feeling well and was confused (see AR 49-51, 60-61, 64).

Sixth, while the ALJ also found there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Blaine v. Berryhill, 2018 WL 6243089, *4 (D. Mont. Nov. 29, 2018)("The ALJ's conclusion that [the claimant's] testimony would

only be accepted to the extent that her hearing testimony was 'consistent with the objective medical ... evidence' is that same as rejecting subjective symptom testimony to the extent that it is inconsistent with the objective medical evidence. Here, the ALJ treated consistency with the objective medical evidence as a necessary condition to credibility, *i.e.*, if a certain symptom is *consistent* with the 'other evidence' but *inconsistent* with the 'objective medical evidence' it is, according to the ALJ, not credible. By treating cconsistency with the objective medical evidence in this way, the ALJ essentially determined that it can be the sole ground for determining that [the claimant's] symptom testimony is not credible, which is the precise practice the Ninth Circuit prohibits."); see also SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.... However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.


Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects.  Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[8]

---

[8]    The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's failure to properly reject the opinions of Plaintiff's treating psychiatrist and other treating physicians (see

(continued...)

**ORDER**

 For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).


 LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: March 26, 2019


 _____
 /s/
 ALKA SAGAR
 UNITED STATES MAGISTRATE JUDGE

---

[8] (...continued)
Joint Stip. at 18-24, 29-30), and the ALJ's failure to properly reject the Third Party Function Report completed by Plaintiff's mother. (<u>see</u> Joint Stip. at 30-33). Because this matter is being remanded for further consideration, these issues should also be considered on remand.